## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| _____ | : |  |
| **FERRIS SMITH** | : |  |
| **Philadelphia, PA 19406** | : |  |
|  | : | **CIVIL ACTION NO.** |
| **Plaintiff,** | : |  |
|  | : |  |
| **v.** | : |  |
|  | : |  |
| **LAW SCHOOL ADMISSION** | : | **JURY TRIAL DEMANDED** |
| **COUNCIL, INC.,** | : |  |
| **662 Penn Street** | : |  |
| **Newtown, PA 18940** | : |  |
|  | : |  |
| **and** | : |  |
|  | : |  |
| **LAW SCHOOL ADMISSION** | : |  |
| **COUNCIL** | : |  |
| **662 Penn Street** | : |  |
| **Newtown, PA 18940** | : |  |
|  | : |  |
| **Defendants.** | : |  |
| _____ | : |  |

## COMPLAINT

## I.    INTRODUCTION

Plaintiff, Ferris Smith, brings this race discrimination, retaliation, and hostile work environment action against her former employers, Law School Admission Council, Inc. and Law School Admission Council (collectively, "Defendants" or "LSAC"). Defendants failed to promote Plaintiff and terminated Plaintiff's employment after she complained about the race discriminatory conduct to which she and other Black employees were subjected. Defendants' discriminatory and retaliatory conduct towards Plaintiff violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); 42 U.S.C. §1981 ("Section 1981"); the Pennsylvania Human

Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"); and the Philadelphia Fair Practices Ordinance, as amended, Phila. Code § 9-1100, *et seq.* ("PFPO"). Plaintiff seeks damages, including economic, compensatory, and punitive damages and all other appropriate relief.

II.    **PARTIES**

1.    Plaintiff, Ferris Smith, is an individual and a citizen of the Commonwealth of Pennsylvania.

2.    Plaintiff is Black.

3.    Defendants are incorporated in Pennsylvania with a principal place of business at 662 Penn Street, Newtown, PA 18940.

4.    Defendants are engaged in an industry affecting interstate commerce and regularly do business in the Commonwealth of Pennsylvania.

5.    At all times material hereto, Defendants employed more than fifteen (15) employees.

6.    At all times material hereto, Defendants acted by and through its authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendants and in furtherance of Defendants' business.

7.    At all times material hereto, Defendants acted as employers within the meaning of the statutes which form the basis of this matter.

8.    At all times material hereto, Plaintiff was an employee of Defendants within the meaning of the statutes which form the basis of this matter.

9.    At all times material hereto, Defendants have had integrated operations, have had shared ownership, have had common management, and/or have had centralized

control of their employment matters.

10. At all times material hereto, Defendants have acted as a single employer, joint employers, and/or alter egos.

11. The operations of Defendants are substantively consolidated.

### III. JURISDICTION AND VENUE

12. The causes of action which form the basis of this matter arise under Title VII, Section 1981, the PHRA, and the PFPO.

13. The District Court has jurisdiction over Count I (Title VII) pursuant to 42 U.S.C. § 2000e-5 and 28 U.S.C. § 1331.

14. The District Court has jurisdiction over Count II (Section 1981) pursuant to 28 U.S.C. §1331.

15. The District Court has supplemental jurisdiction over Count III (PHRA) and Count IV (PFPO) pursuant to 28 U.S.C. § 1367.

16. Venue is proper in the District Court under 28 U.S.C. §1391(b) and 42 U.S.C. § 2000(e)-5(f).

17. On or about October 13, 2023, Plaintiff filed a Complaint of Discrimination with the Pennsylvania Human Relations Commission ("PHRC"), complaining of acts of discrimination and retaliation alleged herein. This Complaint was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). Attached hereto, incorporated herein, and marked as Exhibit "1" is a true and correct copy of the PHRC Complaint of Discrimination (with personal identifying information redacted).

18. On or about December 30, 2024, the EEOC issued to Plaintiff a Notice of Right to Sue for her Complaint of Discrimination. Attached hereto, incorporated herein,

and marked as Exhibit "2" is a true and correct copy of the Notice of Right to Sue (with personal identifying information redacted).

19.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## IV.    **FACTUAL ALLEGATIONS**

20.     Plaintiff was hired by Defendants on or around June 7, 2021.

21.     Plaintiff last held the position of Diversity, Equity, and Inclusion Pipeline and Education Programs Manager.

22.     Plaintiff worked out of her home in Philadelphia, PA.

23.     Plaintiff last reported directly to Laura Fonseca (non-Black), Director of Diversity, Equity, and Inclusion Program and Initiatives.

24.     At the time of Plaintiff's termination of employment in September 2023, Fonesca reported to Angela Winfield (Black), Vice President and Chief Diversity Officer.

25.     At the time of Plaintiff's termination of employment in September 2023, Winfield reported to Kellye Testy (White), President and Chief Executive Officer.

26.     Plaintiff was hired by and initially reported to Fe Lopez (non-Black), then Director of Diversity, Equity, and Inclusion Program and Initiatives.

27.     Winfield and Fonesca played no role in Plaintiff's hiring at Defendants.

28.     On or around July 7, 2022, Plaintiff complained of race discrimination to Winfield in connection with how Plaintiff was being treated by Lopez.

29.     Plaintiff stated to Winfield that she believed if she were a White woman, she would be treated differently and better by Defendants.

30.     Winfield responded to Plaintiff that she agreed that she noticed differences in how Plaintiff was being treated, and that changes would be coming.

31.     Following Fe's departure from Defendants in or around November 2022, Plaintiff began reporting directly to Winfield and took over Lopez's former job duties and responsibilities as Director of Diversity, Equity, and Inclusion Program and Initiatives on an interim basis.

32.     On or around January 13, 2023, Winfield informed Plaintiff that Plaintiff would not be selected as the full-time Director of Diversity, Equity, and Inclusion Program and Initiatives.

33.     Winfield instructed Plaintiff not to apply for the position allegedly due to Plaintiff's lack of leadership skills.

34.     Plaintiff responded to Winfield that she was in fact qualified and interested in the position.

35.     Plaintiff reminded Winfield that she had been performing all of the duties of this position on in interim basis.

36.     Instead of promoting Plaintiff, Defendants hired Fonseca, an external candidate, for the position.

37.     Upon information and belief, Plaintiff was more qualified for the Director of Diversity, Equity, and Inclusion Program and Initiatives position than Fonseca.

38.     Defendants failed to promote Plaintiff into this position because of her race and/or because she had complained of race discrimination at Defendants.

39.     On or around April 3, 2023, Plaintiff began reporting directly to Fonseca.

40.    Plaintiff was instructed to train Fonseca for the Director of Diversity, Equity, and Inclusion Program and Initiatives position that Fonseca was awarded instead of Plaintiff.

41.    Certain of Plaintiff's job duties and responsibilities were removed from Plaintiff and assigned to Fonseca.

42.    On or around April 12, 2023, Winfield gave Plaintiff a Learning and Building performance review rating.

43.    Plaintiff's performance did not warrant a Learning and Building rating.

44.    Plaintiff's performance warranted a Successful performance review rating, which is the rating that Plaintiff had received the year before.

45.    Plaintiff complained of race discrimination and retaliation in connection with the Learning and Building rating that she received.

46.    Winfield and Fonseca treated Plaintiff in a dismissive and demeaning manner, differently and worse than non-Black and/or non-complaining employees were treated.

47.    On or around April 19, 2023, Fonseca told Plaintiff that they had a communication issue.  Fonseca stated that she was trying to learn her job, and that they had to determine what job duties were Plaintiff's and which job duties would be handled by Fonseca.

48.    On or around May 16, 2023, Winfield instructed Plaintiff to "try harder" with Fonseca.

49.     On or around June 6, 2023, Winfield informed Plaintiff that she would not be receiving a salary increase and that Plaintiff would be placed on a Performance Improvement Plan ("PIP").

50.     Ultimately, however, Plaintiff was not placed on the PIP.

51.     Defendants failed to give Plaintiff a salary increase and threatened to place her on a PIP because of her race and/or her race discrimination complaints.

52.     On or around June 6, 2023, Plaintiff informed Jenna Cook (White), Vice President of Human Resources, that she did not receive a salary increase and requested a meeting with her regarding the same.

53.     On or around June 7, 2023, Plaintiff complained to Cook of race discrimination and retaliation for raising race discrimination complaints.

54.     Plaintiff stated to Cook that Black employees, including Plaintiff, have not been promoted and non-Black employees have been hired or promoted instead.

55.     Plaintiff further stated that she felt she was being treated worse because of her race, and that she felt she was not being treated on an equal playing field as non-Black employees.

56.     Plaintiff also stated to Cook that she felt that she did not receive a pay increase because of her race and her race discrimination complaints.

57.     Cook responded by stating that she would speak with Winfield.

58.     Plaintiff relayed to Cook that she was interested in exploring other positions with Defendants due to the lack of support from, and her concerns about, her supervisors.

59.    On or around June 14, 2023, Winfield informed Plaintiff that she was working on a written document for her, but that it would not be a PIP.

60.    Plaintiff responded by stating that she still had not received any explanation or basis for why she did not receive an annual salary increase and why certain job duties and responsibilities were reassigned to Fonseca.

61.    On June 19, 2023, Winfield sent Plaintiff an email entitled, "Performance Expectations."

62.    On June 20, 2023, Plaintiff forwarded Winfield's email to Cook and requested a meeting to discuss the same.

63.    On or around June 26, 2023, Cook informed Plaintiff that Winfield had denied Plaintiff's request to transfer to another position within Defendants.

64.    Plaintiff told Cook that non-Black employees had been allowed to be transferred to other positions within Defendants, so she did not understand why she could not do the same.

65.    On or around June 28, 2023, Cook informed Plaintiff that there were no open positions for Plaintiff within Defendants.

66.    Cook further stated that instead of a transfer, Defendants could offer Plaintiff a severance package in exchange for a release of all claims and confidentiality.

67.    Cook stated that Defendants could come up with a date in early July 2023 to be Plaintiff's last day of employment.

68.    Defendants failed to transfer Plaintiff and instead offered her a release agreement because of her race and/or her complaints of race discrimination.

69.     On June 30, 2023, Cook emailed Plaintiff stating that Fonseca and Winfield were "aware that [Plaintiff was] leaving," and suggested July 5, 2023, as Plaintiff's resignation date.

70.     Plaintiff responded to Cook stating that it was not true that Plaintiff was resigning, as Plaintiff did not state she intended to resign nor did she submit any communication to that effect.

71.     On July 12, 2023, Plaintiff sent an email to Cook, Fonseca, and Winfield stating that she had no intention of resigning or accepting a severance package.

72.     Plaintiff further inquired about the status of any investigation that should have been prompted by Plaintiff's earlier complaints of race discrimination.

73.     On July 19, 2023, Plaintiff emailed Cook, reiterating that Plaintiff had complained specifically to Cook on June 7, 2023, of race discrimination and retaliation in connection with Defendants' failure to give Plaintiff an annual salary increase and other treatment by Defendants.

74.     Plaintiff again informed Cook that at no point did Plaintiff resign her employment from Defendants, nor was she interested in a severance package.

75.     On or around August 3, 2023, Fonseca instructed Plaintiff to prepare a list of certain processes and work tasks that Plaintiff did so that she had it on file for future reference.

76.     On or around August 7, 2023, Plaintiff met with an attorney hired by Defendants to serve as an outside investigator into Plaintiff's complaints of race discrimination and retaliation.

77.     Plaintiff explained to the investigator that she was being discriminated and retaliated against in connection with Defendants' failure to promote Plaintiff, the lack of annual salary increase, and in the way she was being treated by Defendants.

78.     Plaintiff further informed the investigator that she refused to accept the severance package to leave her employment with Defendants.

79.     Plaintiff received no further communication regarding her race discrimination complaints or Defendants' investigation into the same.

80.     Plaintiff received no conclusion or finding or investigative report in connection with her race discrimination complaints or Defendants' investigation into the same.

81.     Following her complaints of race discrimination, Plaintiff was treated in a more hostile and dismissive manner, differently and worse than non-Black and/or non-complaining employees were treated.

82.     For example, Plaintiff was excluded from meetings and communications related to her job duties and was false accused of misappropriating company hours.

83.     On September 8, 2023, Fonseca and Cook met with Plaintiff and terminated her employment, effective immediately.

84.     The stated reason for the termination was that Plaintiff did not meet expectations and that the situation had become untenable.

85.     Fonseca further stated that Plaintiff's behavior and actions had been inconsistent with Defendants' values and expectations, that Plaintiff had been insubordinate and had a negative attitude, and that she same had a significant and detrimental impact on the overall morale of the DEI team, which could not continue.

86.    Defendants terminated Plaintiff's employment because of her race and/or her race discrimination complaints.

87.    Plaintiff was the only employee reporting to Fonesca that was terminated effective September 8, 2023.

88.    Plaintiff had no opportunity to remain employed with Defendants.

89.    Before Plaintiff complained of race discrimination, Plaintiff had no indication that her job was in jeopardy.

90.    Defendants retained and did not terminate non-Black and/or non-complaining employees.

91.    Plaintiff's race was a motivating and/or determinative factor in connection with Defendants' discriminatory treatment of Plaintiff, including subjecting her to a hostile work environment, failing to promote Plaintiff, and terminating her employment.

92.    Plaintiff's complaints about Defendants' discriminatory conduct were motivating and/or determinative factors in connection with Defendants' retaliatory conduct to which Plaintiff was subjected, including subjecting her to a hostile work environment, failing to promote Plaintiff, and terminating her employment.

93.    The retaliatory actions taken against Plaintiff after she complained of discriminatory conduct would have discouraged a reasonable employee from complaining of discrimination.

94.    Defendants failed to prevent or address the discriminatory and retaliatory conduct referred to herein and further failed to take corrective and remedial measures to make the workplace free of discriminatory and retaliatory conduct.

95.    The conduct of Defendants, as set forth above, was severe and/or

pervasive enough to make a reasonable person believe that the conditions of employment are altered and the working environment is hostile or abusive.

96.     As a direct and proximate result of the discriminatory and retaliatory conduct of Defendants, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

97.     The conduct of Defendants, as set forth above, was outrageous under the circumstances, was done by and with the knowledge of upper management and warrants the imposition of punitive damages against Defendants.

98.     The conduct of Defendants, as set forth above, was willful and intentional.

### COUNT I – Title VII

99.     Plaintiff incorporates herein by reference paragraphs 1 through 98 above, as if set forth herein in their entirety.

100.     By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated Title VII.

101.     Said violations were done with malice and/or reckless indifference.

102.     As a direct and proximate result of Defendants' violation of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

103.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

104.    No previous application has been made for the relief requested herein.

## COUNT II – Section 1981

105.    Plaintiff incorporates herein by reference paragraphs 1 through 104 above, as if set forth herein in their entirety.

106.    By committing the foregoing acts of discrimination and retaliation, Defendants have violated Section 1981.

107.    Said violations were done with malice and/or reckless indifference, and warrant the imposition of punitive damages.

108.    As a direct and proximate result of Defendants' violation of Section 1981, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

109.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

110.    No previous application has been made for the relief requested herein.

## COUNT III – PHRA

111.    Plaintiff incorporates herein by reference paragraphs 1 through 110 above, as if set forth herein in their entirety.

112.    Defendants, by the above improper and discriminatory and retaliatory acts, have violated the PHRA.

113.    As a direct and proximate result of Defendants' violation of the PHRA, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorneys' fees and costs.

114.    Plaintiff is now suffering and will continue to suffer irreparable injuries and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until the Court grants the relief requested herein.

115.    No previous application has been made for the relief requested herein.

## **COUNT IV - PFPO**

116.    Plaintiff incorporates herein by reference paragraphs 1 through 115 above, as if set forth herein in their entirety.

117.    Defendants, by the above improper and discriminatory acts, have violated the PFPO.

118.    Said violations were intentional and willful.

119.    As a direct and proximate result of Defendants' violation of the PFPO, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorney's fees and costs.

120.    Plaintiff is now suffering and will continue to suffer irreparable injuries and monetary damages as a result of Defendants' discriminatory acts unless and until the Court grants the relief requested herein.

121.    No previous application has been made for the relief requested herein.

## **RELIEF**

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' improper conduct, and specifically prays that the Court grant the following relief to the Plaintiff by:

(a)    declaring the acts and practices complained of herein to be in violation of Title VII;

(b)     declaring the acts and practices complained of herein to be in violation of Section 1981;

(c)     declaring the acts and practices complained of herein to be in violation of the PHRA;

(d)     declaring the acts and practices complained of herein to be in violation of the PFPO;

(e)     enjoining and permanently restraining the violations alleged herein;

(f)     entering judgment against the Defendants and in favor of the Plaintiff in an amount to be determined;

(g)     awarding compensatory damages to make the Plaintiff whole for all lost earnings, earning capacity, and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct;

(h)     awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct;

(i)     awarding punitive damages to Plaintiff under Title VII;

(j)     awarding punitive damages to Plaintiff under Section 1981;

(k)     awarding punitive damages to Plaintiff under the PFPO;

(l)     awarding Plaintiff such other damages as are appropriate under Title VII, Section 1981, the PHRA, and the PFPO;

(m)     awarding Plaintiff the costs of suit, expert fees, and other disbursements, and reasonable attorneys' fees; and,

(n)      granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.


                              **CONSOLE MATTIACCI LAW, LLC**


Dated: January 10, 2025          BY:    */s/ Rahul Munshi*
                                        Rahul Munshi, Esq.
                                        1525 Locust Street, 9th Floor
                                        Philadelphia, PA 19102
                                        (215) 545-7676

                                        *Attorneys for Plaintiff,*
                                        *Ferris Smith*