# EXHIBIT 1

CITY OF PHILADELPHIA
PHILADELPHIA COMMISSION ON HUMAN RELATIONS

### COMPLAINT

COMPLAINANT:

**FERRIS SMITH**

v.

RESPONDENTS:

**LAW SCHOOL ADMISSION COUNCIL INC.**

and

**LAW SCHOOL ADMISSION COUNCIL**

PCHR   Docket No. 2023-10-19-15992
EEOC Docket No. 176-2024-00003

1. The Complainant herein is:

   Name:      Ferris Smith

   Address:   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
              Philadelphia, PA 19147

2. The Respondents herein are:

   Names:     Law School Admission Council Inc.; Law School Admission Council

   Address:   662 Penn Street
              Newtown, PA 18940

3. I, Ferris Smith, the Complainant herein, allege that I was subjected to unlawful discrimination because of my race (black), and retaliation because I complained of race discrimination, as set forth below.

## Discrimination and Retaliation

### A. I specifically allege:

[1]     I was hired by Respondents on June 7, 2021.

[2]     I consistently performed my job duties in a highly competent manner.

[3]     I worked out of my home office in Philadelphia, Pennsylvania.

[4]     I last held the position of Diversity Equity and Inclusion Pipeline and Education Programs Manager.

[5]     I last reported to Laura Fonseca (white), Director of Diversity, Equity, and Inclusion Program and Initiatives. Fonseca reported to Angela Winfield (black), Vice President and Chief Diversity Officer. Winfield reported to Kellye Testy (white), President and Chief Executive Officer.

[6]     Before reporting to Fonseca, I reported to Winfield.

[7]     Before reporting to Winfield, I reported to Fe Lopez (Hispanic), who hired me.

[8]     Winfield had no role in my being hired at Respondents.

[9]     On July 7, 2022, in a meeting with Winfield, I complained of race discrimination in connection with how I was being treated. I stated that, if I were a white woman, I believed that I would be treated differently and better. Winfield agreed, stated that she had noticed a difference in how I was being treated, and stated that changes would be coming.

[10]    Respondents failed to investigate my race discrimination complaints.

[11]    Respondents failed to remedy or prevent the race discrimination at Respondents.

[12]     On January 13, 2023, in a meeting with Winfield, following Lopez's resignation, Respondents failed to promote me to Director of Diversity, Equity, and Inclusion Program and Initiatives. Winfield instructed me not to apply for the posted position. The stated reason was that I did not have the necessary leadership skills. I was qualified for the position, and I told Winfield that I was qualified for and interested in the position. I stated that I had performed all the duties of the position. Instead of promoting me, Respondents hired Fonseca (white), an external candidate, for the position. I was more qualified for the Director of Diversity, Equity, and Inclusion Program and Initiatives position than the white employee who was selected instead of me and to whom I was assigned to report.

[13]     Respondents failed to promote me because of my race and/or my race discrimination complaints.

[14]     On April 3, 2023, I began reporting to Fonseca.

[15]     Fonseca had no role in my being hired at Respondents.

[16]     I was instructed to train Fonseca (white) for the Director of Diversity, Equity, and Inclusion Program and Initiatives position.

[17]     I was treated in a hostile, dismissive, and demeaning manner, differently and worse than white and/or noncomplaining employees were treated.

[18]     My performance was unjustly criticized.

[19]     I was spoken to in a condescending manner.

[20]     I was spoken to in an abrasive manner.

[21]     I was prevented from advancing in my position while white employees advanced in their positions.

[22]     Certain of my job duties were removed from me and assigned to Fonseca (white).

[23]     I was blamed for issues out of my control.

[24]     On April 12, 2023, in a meeting with Winfield, I received a Learning and Building performance review rating. My performance did not warrant a Learning and Building rating, and instead warranted a Successful performance review rating, the rating that I had received the year before. I complained of race discrimination in connection with the rating I received. Winfield told me to show Fonseca the best side of me.

[25]     Respondents gave me a Learning and Building performance review rating and failed to give me a Successful performance review rating because of my race and/or my race discrimination complaints.

[26]     On April 19, 2023, in a meeting with Fonseca, she told me that we had a communication issue. She told me that she was trying to learn her job, and that we had to determine what my job duties were and what her job duties were.

[27]     On May 16, 2023, in a meeting with Winfield, she instructed me to try harder with Fonseca.

[28]     On June 6, 2023, in a meeting with Winfield, Respondents failed to give me a salary increase. The stated reasons were that I did not take ownership of or document my work. My performance warranted a salary increase. Winfield told me, without explanation, that I would be placed on a Performance Improvement Plan ("PIP").

[29]     Respondents failed to give me a salary increase because of my race and/or my race discrimination complaints.

[30]     I was not placed on a PIP.

[31]     On June 6, 2023, following the above, in an email to Jenna Cook (white), Vice President for Human Resources, I stated that I did not receive a salary increase and I requested a meeting with her regarding the same.

[32]     On June 7, 2023, in a conversation with Cook, I complained of race discrimination and retaliation because of my race discrimination complaints. I stated that black employees, including me, have not been promoted and white employees have been hired or promoted instead. I stated that I felt that I was being treated worse because of my race, and that I did not feel like I was on the same playing field as white employees were. I stated that I believed that I was not given a salary increase because of my race and race discrimination complaints. Cook told me that she would speak with Winfield about providing me with documentation regarding the performance evaluation and the denial of my annual increase. I stated that I was interested in exploring other positions within Respondents, due to the lack of support from and concerns I had with my supervisors.

[33]     Respondents failed to investigate my race discrimination and retaliation complaints.

[34]     Respondents failed to remedy or prevent the race discrimination and retaliation to which I was subjected.

[35]     On June 14, 2023, in a meeting with Winfield, she told me that she connected with Fonseca and that she wanted to bring up some issues with me. She stated that she had very high expectations for team members and wanted to be clear about her expectations. She stated that she was working on a written document to send me, but that it was not a PIP. She stated that she did not have time to manage the way she wanted to, and that she would share the document with Fonseca. She stated that there were areas where I was learning and developing,

and she needed to see some growth. I asked why I had not received an annual salary increase, as I had not received any explanation or basis for not receiving it. I stated that I did not understand why certain job duties and responsibilities were removed from me and assigned to Fonseca. Winfield stated that the document she was preparing would have more information for me.

[36]    On June 19, 2023, in an email from Winfield, she attached a document "clarifying position expectations," entitled "Performance Expectations."

[37]    On June 20, 2023, in an email to Cook, I forwarded to her the positions expectations document from Winfield, and stated that I wanted to speak with Cook about it.

[38]    On June 26, 2023, in a meeting with Cook, she told me that Winfield had denied my request for transfer to another position within Respondents. I stated that white employees had been allowed to be transferred to other positions within Respondents, so I did not understand why I could not do the same. She stated that she would get back to me with any other open position options within Respondents.

[39]    On June 28, 2023, in a meeting with Cook, she told me that there were no other positions available for me to be transferred to, and that she did not have another job for me. She stated that she did not think it made sense to have further discussions with me regarding my performance or the position expectations document if I was no longer interested in my current position or reporting to my current supervisors. Cook stated that she wanted to help alleviate this situation for me and would look into the option of giving me security in the form of severance in exchange for a release of all claims and confidentiality. She stated that Respondents could come up with a date in early July 2023 to be my late day of employment.

[40]    Despite my requests, Respondents failed to transfer me to another position and/or reporting structure.

[41]    Respondents failed to transfer me to another position and/or reporting structure because of my race and/or my race discrimination complaints.

[42]    On June 30, 2023, in an email from Cook, she stated that Fonseca and Winfield were "aware that [I was] leaving," that they wished me well, that they were waiting to hear from me regarding my resignation date, and that she suggested July 5, 2023 as my resignation date.

[43]    On July 3, 2023, in an email to Cook, I stated that her email stated that I was resigning, which was not true, as I had not stated I was resigning or submitted any communication to that effect.

[44]    On July 3, 2023, in a response email from Cook, she stated that we could schedule a time to "connect," "as there are a few questions and explanations to go through before any documentation can be sent to [me]."

[45]    On July 3, 2023, in an email from Winfield, she stated that Cook had let her "know [my] decision to move out of the DEI Team."

[46]    I did not resign, and I did not express any desire to resign or any intention of resigning.

[47]    On July 12, 2023, in an email to Cook, Fonseca, and Winfield, I stated the following: "In the past weeks, I have been asked to resign and I understand there have correspondences stating that I have resigned, which is false. To provide clarity, I have not resigned and I am not going to resign, nor will I accept the severance package. I expect to continue working when I return to work as scheduled on July 27, 2023. Furthermore, I have not heard back from anyone concerning my June 7th conversation with Jenna Cook, where I

complained of race discrimination in connection with how this company is doing business and how I am being treated. I would like to know where we stand with that investigation."

[48]     On July 13, 2023, in an email from Cook, she falsely stated that I refused to continue in my position and reporting to Winfield and denied that I had previously complained of race discrimination. She stated that my complaints would be investigated.

[49]     On July 19, 2023, in an email to Cook, I stated the following: "On June 6th, I emailed you concerning an impromptu meeting requested by Angela about not receiving my annual increase, where Angela ambiguously stated her reasoning as 'purposeful' because of my lack of note taking and not 'owning' my work. During our meeting on June 7th at 12pm, I stated to you that my denial of my annual increase was retaliatory because of my complaints of racial discrimination within the company. I requested from you and Angela a 'formal letter or any other form of documentation' that clearly detailed her decision for not granting me my annual increase, but also a written distinction of my job description and responsibilities, due to Laura and I having the same job description, which was also brought to Angela's attention. I also requested if it was possible for my position to be transferred to RISE Alliance with Jay Austin because of his conversation with Susan Krinsky on May 18th, where Jay and Susan both agreed that my transfer would be a "win win" situation. Upon ending our meeting, you agreed to speak with Angela about providing me documentation concerning the performance evaluation and the denial of my annual increase but asked if I could speak with Jay about meeting with Angela to discuss the transfer. On June 20th, I sent you another email requesting a meeting which included an attachment of Angela's expectation document that I received on June 19th, that did not include or mention any details, examples or reasoning for my job performance between February 27th 2022 – February 28th 2023, however only mentioning my work with Laura who began her

position on April 3rd 2023. On June 26th at 11am during our meeting you explained that Angela had denied the transfer to Rise Alliance because she did not want to give up another FTE but gave no explanation to her decision. I explained that Angela had no issue allowing a transfer of another colleague because she thought it was 'for the good of the company'. Additionally, I also stated that Jay Austin was unable to speak with Angela because she kept cancelling meetings to meet Jay to discuss me transferring to his boundary. At that time, you told me that there were several job openings in other boundaries, however some of the positions had a lower salary or were already in the interview process, but you would 'get back with me' with the outcome after you speak again with senior leadership and legal counsel concerning the transfer of FTE. On June 28th at 1:15pm, you requested to meet with me again and informed me that there were not any available positions and there was nothing else to be done. Again, I informed you that Jay Austin was still unable to speak with Angela to discuss the FTE transfer because of her lack of acceptance of meeting requests. You also stated that Laura had reached out to you to complaining that I was absent and did not complete any of the work during her month vacation, which I replied that I was on PTO on June 15th and 16th and used my available "unscheduled time" from June 20th – 23rd, which I could provide medical documentation to prove the authenticity of leave. Again, I stated that I still had not received any formal documentation from HR or Angela regarding my request about the denial of annual increase or details concerning my performance review which was an issue because of the lack of 'documented trail' that was not presented in my employee file. You stated you would get back to me with those documents and again asked if I could speak with Jay Austin to see if he has had any luck meeting with Angela. I also did not receive any further communication regarding my race discrimination complaints. On June 30th at 9:05, I received an email from you stating that 'LSAC is prepared to put together

a package equal to six weeks of salary continuation' and you would like to connect on 'Monday July 3rd to talk through the process and next steps'. Lastly, you stated that 'also, I suggest Wednesday, July 5, as your official resignation date', concluding that you wanted to send me this 'information in advance of the weekend and our meeting'. On July 3rd, I replied to your email stating that I was out of the office using unscheduled time and could not meet with you that day but additionally, the letter 'stated I am "resigning", which I never stated nor composed any formal documentation stating my departure/resignation'. At no time did I resign, and I am not resigning from my employment. In terms of meeting with the independent investigator to address my race discrimination complaints, I will connect with you upon my return to work to coordinate a time."

[50]    On August 1, 2023, in a meeting with Winfield, we reviewed the positions expectations document that she had sent to me, which she again clarified was not a PIP. I stated that I was blamed for issues out of my control, and that I was unjustly criticized when I followed outlined processes.

[51]    On August 3, 2023, in a meeting with Fonseca, she instructed me to prepare a list of certain processes and work tasks that I did so that she had it on file for future reference.

[52]    On August 7, 2023, in a meeting with Stephanie Peet (white), Outside Investigator, I complained of race discrimination in connection with my not being promoted, not being given a salary increase, and how I was being treated. I stated that I was offered severance to leave my employment, and I refused to accept it.

[53]    I received no further communication regarding my race discrimination complaints or Respondents' investigation into the same.

[54]   I received no conclusion or finding or investigative report in connection with my race discrimination complaints or Respondents' investigation into the same.

[55]   Following my race discrimination complaints, I was treated in a more hostile and dismissive manner, differently and worse than white and/or noncomplaining employees were treated.

[56]   I was excluded from meetings and communications related to my job duties.

[57]   I was treated in a cold manner.

[58]   Certain of my job duties and responsibilities were removed from me and assigned to white and/or noncomplaining employees.

[59]   My performance was unjustly criticized.

[60]   I was falsely accused of misappropriating company hours.

[61]   I was held to a higher, more stringent standard than white and/or noncomplaining employees were held.

[62]   On September 8, 2023, in a meeting with Fonseca and Cook, Respondents terminated my employment, effective immediately. The stated reason for my termination was that I did not meet expectations and the situation had become untenable. Fonseca stated that expectations were reset in early August and that she was hopeful for a successful working relationship, but this had not been the experience. She stated that I pushed back and had been uncooperative in my interactions with her. She stated that my behavior and actions had been inconsistent with Respondents' values and expectations, I had been insubordinate and had a negative attitude, and that the same had a significant and detrimental impact on the overall morale of the DEI team, which could not continue.

[63]     Respondents terminated my employment because of my race and/or my race discrimination complaints.

[64]     I was the only employee who was terminated effective September 8, 2023.

[65]     I had no opportunity to remain employed with Respondents.

[66]     Respondents assigned my job duties and responsibilities to white and/or noncomplaining employees. I was more qualified to perform my job duties and responsibilities than the noncomplaining and/or white employees to whom Respondents assigned my job duties and responsibilities.

[67]     Respondents failed to take any action to remedy or prevent the race discrimination and retaliation to which I was subjected.

[68]     Respondents subjected me to a hostile work environment because of my race and/or my race discrimination complaints.

[69]     Respondents did not place me on any progressive discipline before terminating my employment.

[70]     The race- and retaliatory-based hostile work environment to which I was subjected constitutes a continuing violation.

[71]     Other employees have complained of race discrimination at Respondents.

[72]     Respondents' race discriminatory and retaliatory conduct has caused me emotional distress.

[73]     Respondents' conduct and comments evidence a bias against black employees and/or employees who engage in protected activity.

[74]     Respondents have an underrepresentation of black employees in high-level positions.

[75]  Twelve (12) out of the thirteen (13) employees on Respondents' leadership team are white.

B. Based on the aforementioned, I allege that Respondents have discriminated against me because of my race (black), and retaliated against me because of my complaints of race discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, et seq. ("PFPO"), and Section 1981 of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981, *et seq.* ("1981").

2. The allegations in Paragraph 3 hereof constitute unlawful discriminatory practices in violation of:

    __X__   **Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101,** *et seq.* **("PFPO"), Section __9-1103__.**

3. Other action based upon the aforesaid allegations has been instituted by the Complainant in any court or before any other commission within the Commonwealth of Pennsylvania as follows:

    __X__   **This charge will be referred to the EEOC for the purpose of dual filing.**

4. The Complainant seeks that Respondents be required to:

    A. Make the Complainant whole.

    B. Eliminate all unlawful discriminatory practice(s) and procedure(s).

    C. Remedy the discriminatory effect of past practice(s) and procedure(s).

D. Take further affirmative action necessary and appropriate to remedy the violation complained of herein.

E. Provide such further relief as the Commission deems necessary and appropriate.

## VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

10/13/2023
(Date Signed)

(Signature)    Ferris Smith

Philadelphia, PA 19147